UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

IN RE:                                           Chapter 11 Reorganization
                                                 (Jointly Administered)

JUS BROADCASTING CORPORATION,                    Case No.   24-45180 (JMM)
JUS PUNJABI LLC,                                 Case No.   24-45181 (JMM)
JUS ONE CORP.,                                   Case No.   24-45182 (JMM)
                              Debtors.
-------------------------------------------------------x

## DEBTORS' DISCLOSURE STATEMENT UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS

Leo Fox, Esq.
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

***COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION***

## DEBTORS' DISCLOSURE STATEMENT
## DATED AS OF JUNE 11, 2025

## INTRODUCTION

1.      The above-captioned Debtors [1] submits this Disclosure Statement pursuant to §1125 of the Bankruptcy Code to its known creditors in order to disclose that information deemed by the Debtors to be material, important and necessary for the Creditors and Holders of Stock Interest to arrive at a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Plan of Reorganization (hereafter the "*Plan*"), on file with the Bankruptcy Court. Only "*impaired*" Creditors, as that term is defined in the Bankruptcy Code, are entitled to vote for the Plan or to reject the Plan.   A full definition of what constitutes impairment is contained in § 1124 of the Bankruptcy Code.

2.      A copy of the Plan accompanies this Disclosure Statement, as well as a Ballot Form for the acceptance or the rejection of the Plan, and a Notice and Order conditionally approving the adequacy of the information contained in the Disclosure Statement, fixing the time for filing acceptances and rejections to the Plan and for a hearing on Confirmation of the Plan.

3.      The Court has set_____, 2024 at __:00 _.m. for a hearing on the acceptance or rejection and Confirmation of the Plan.   Creditors who are entitled to vote may vote on the Plan by filling out and mailing, on or before _____2024 the accompanying Ballot to Counsel for the Debtors, Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York, New York 10017.

4.      As a Creditor, your vote is important.   In order for the Plan to be deemed accepted,

---

[1]   Capitalized terms used herein shall have the same meaning as defined in the Plan.

members of each impaired Class designated in the Plan that hold at least two-thirds (2/3) in amount and more than one-half (2) in number of the Claims of the Class that vote must vote for the Plan. A claim or interest is impaired unless the Plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default; (A) cures or provides for a cure subject to Court approval of any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in §365 (b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (c) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (d) cures or provides for a cure of any default on a claim or interest, and reinstates the maturity of the claim or interest and compensates the holder of such claim or interest under the provisions of §1124(2)(A)(B)(C)(D) and (E) of the Bankruptcy Code and (e) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

5.      On the Confirmation Date, the Debtors will request an Order of the Court subordinating the claims of Kashmir Gill (the "*Litigation Creditor*") to the claims of general unsecured creditors and (2) substantively consolidating all three Debtors for all purposes including distribution.

> ***NO REPRESENTATIONS CONCERNING THE DEBTORS ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH IS OTHER THAN AS***

*CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.*

*THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE DEBTORS IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.*

*APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT BY THE COURT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE MERITS OF THE PLAN. THE COURT DOES NOT RENDER ANY OPINION AS TO WHETHER THE PLAN SHOULD BE ACCEPTED OR REJECTED BY CREDITORS.*

*CREDITORS ARE URGED TO READ THE PLAN IN FULL. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTORS AND ITS CREDITORS AND SHAREHOLDERS AND INTERESTED PARTIES, AND IT SHOULD BE READ TOGETHER WITH THIS DISCLOSURE STATEMENT SO THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE PLAN CAN BE MADE.*

6.     The following chart summarizes the Classes, the treatment of the Classes and the expected recovery.

| Class | Claim | Claim Amount | Treatment | Projected Recovery | Status | Voting Rights |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
| 1 | JP Morgan Chase Bank | $233,960.48 Pursuant to a Line of Credit | This creditor shall be paid 100% of its Allowed claim at a rate of 6.5%, per annum, payable in | 100% | Impaired | Shall vote on the Plan |

| | | | monthly installments of $4,036 per month commencing on the Effective Date and continuing up through six (6) years after the Effective Date constituting payment in full of the amounts due to JP Morgan Chase. JP Morgan Chase shall retain its first position priority security interests in the collateral in which JP Morgan Chase had pre-petition security interests prior to the Chapter 11 filing. | | | |
|---|---|---|---|---|---|---|
| 2 | CESC-COVID EIDL Service Center | $2,198,650.71 | This creditor shall be paid in monthly installments of $2,500 per month commencing on the Effective Date and up through two (2) years after the Effective Date, and the parties shall negotiate the terms or resolution of the claim for each of the following two (2) years thereafter and such creditor shall retain its second position priority security interests in the collateral in which EIDL had pre-petition security interests prior to the Chapter 11 filing. | 100% | Impaired | Shall vote on the Plan. |
| 3a | Secured Vehicle Creditor | (Mercedes-Benz) | With respect to the Mercedes GLE450W4, this creditor shall be paid $1,842.54 per month for three (3) years | 100% | Impaired | Shall vote on the Plan. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | from the Effective Date totaling $66,312 representing an amount greater than the amount owed to the creditor. Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments. | | | |
| | | | | | | |
| 3b | Secured Vehicle Creditor | (Ally Bank) | With respect to the Chevy Truck – Model 3500, this creditor shall be paid $1,250 per month for three (3) years from the Effective Date totaling $45,000 representing an amount greater than the value of the vehicle ($43,000). Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments | 100% | Impaired | Shall vote on the Plan. |
| | | | | | | |
| 3c | Secured Vehicle Creditor | (Stellantis Financial Services) | With respect to the 2023 Chrysler Pacifica, this creditor shall be paid $583 per month for three (3) years from the Effective Date totaling $21,000 representing an amount greater than the present value of the vehicle ($19,000). Prepayment, without penalty, is permitted | 100% | Impaired | Shall vote on the Plan. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments. | | | |
| 4 | Allowed Unsecured Creditor | | These creditors shall be paid a total of 10% of their Allowed claims payable in ten (10) installments with each installment in the amount of one tenth (1/10) of such 10% amount, without interest, commencing on the anniversary of the Effective Date each year, for a period of ten (10) years. | | | |
| | | | | | | |
| 5 | Kashmir Gil | $2,178,904.08 | *Class 5* is the claim of Kashmir Gill ("*Gill*") in the amount of $2,178,904. An Adversary Proceeding has commenced to subordinate the claims of Gill to the claims of all creditors pursuant to § 510 of the Bankruptcy Code as claims arising out of the purchase of securities of the Debtors. This creditor's claim is subordinate to the extent of $2,664,070.80 subordinate to all other creditors in this case, and, as a | | | |

| | | | negative deficit value equal to minus $2,319,070.80 representing the sum of $2,664,070.80 in claims less $325,000 in the valuation of the assets as determined in creditor Gill's litigation papers which were filed in the New York State Supreme Court. The Debtor objects to this litigation claim. *Class 5* shall receive a distribution equal to 10% of the distribution payable to unsecured creditors payable over ten (10) years in equal monthly installments, without interest, commencing on the Effective Date. Penny Sandhu shall make these payments. | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |
| 6 | Penny K. Sandhu | 100 % Equity Owner | The claim of Penny K. Sandhu, which equity interest is being cancelled, and the new equity interest is being purchased by Ms. Sandhu in consideration for paying the Gill distribution and for agreeing to make payments of any administrative obligations. On or | | Impaired | Shall vote for the Plan |

| | | | before Confirmation, the Debtors and Ms. Sandhu will enter into an Employment Agreement pursuant to which for a period of five (5) years, Ms. Sandhu will enter into an Employment Agreement pursuant to which, for a period of five (5) years, Ms. Sandhu will act as President and Chief Operating Officer of the Debtors at a salary of $50,000 or to be agreed upon with annual increases and addition fringe benefits as is presently provided. It will be the function of Ms. Sandhu to make all operational decisions involving the Debtors in the nature of their business. The Debtors acknowledge that Ms. Sandhu's value to the Debtors is well in excess of the salary being proposed and will seek to accommodate, reasonably, with all of Ms. Sandhu's requests. | | | |
|---|---|---|---|---|---|---|

## **BACKGROUND**

7.     On December 11, 2024, the above Debtors filed a voluntary Petition pursuant to title 11, chapter 11 of the United States Code, (the "*Bankruptcy Code*").

8.     The Debtors owns and operates a television broadcast network having two (2) channels in programing, generally, related to matters involving India.    Jus Broadcasting Corporation renders the administrative and billing for all customers and sells and collects all advertising and subscription monies for Jus Punjabi LLC and Jus One Corp.    The channel owned by Jus Punjabi LLC is a "*general entertainment channel*" which deals with the Punjabi population nationwide.    The channel owned by Jus One Corp. deals with the spiritual or religious aspects of the Hindi and Punjabi population nationwide.

9.     The entities identified above render the following tasks.    Jus Broadcasting Corporation renders the administrative and billing for all customers and collect all advertising and subscription monies for Jus Punjabi LLC and Jus One Corp.    In addition, Jus Broadcasting sells advertising space on the two (2) channels owned by Jus Punjabi LLC (dealing with the Punjabi population nationwide) and Jus One Corp. (dealing with the spiritual or religious aspects of *the Hindi and Punjabi population nationwide) Jus Punjabi LLC is a "general* entertainment channel". Both of these companies provide programing which are shown on the company's two (2) channels. Thus, Jus Broadcasting Corporation acts as an agent with third-party advertising agencies, selling advertising slots on the two (2) channels which the advertising agency, in turn, sell to various advertisers who are interested in specific markets. Jus Broadcasting Corporation maintains an inter-company account reflecting the amounts due to the two (2) entities for the sale of slots on their programming.    Jus Broadcasting Corporation receives a 20% commission for all advertising spot sales with respect to these two (2) channels.

10.     In addition, Jus Broadcasting Corporation provides ground events and production work for other companies, which are not related to or owned by Penny K. Sandhu, for which they

are paid a fee. For example, many customers hire Jus Broadcasting Corporation's LED video truck for purposes of ground marketing in various neighborhoods for purposes of promoting and advertising certain products.

11. Finally, Jus Broadcasting Corporation renders similar services for two (2) channels owned by two (2) companies which are owned by Aashmeeta Melendez who is my daughter. However, my daughter's channels are mainstream Hindi language channels as opposed to my two (2) channels which are Panjabi and spiritual. In any event, Jus Broadcasting Corporation receives the same 20% agency commissions for Jus Broadcasting Corporation's efforts in selling advertising spots on my daughter's channels as Jus Broadcasting Corporation receives on advertising on the channels owned by Jus Punjabi and Jus One.

12. In or about 2016, the Debtors invested in a similar Indian focused operation in the United Kingdom attempting to attract the many English citizens of Indian heritage to its Indian and Punjabi based programing. The Debtors were required to invest substantial funds in acquiring the channel from its television source. In addition, the television sources controlled the timing of the channels and merged the scheduling times with other television and Punjabi channels thus diluting the value of the programing. It became difficult to operate in England and impossible to transfer the programming to a buyer. The channel closed during the 2018 and 2019 time period reflecting a loss of approximately $1,200,000.

## SUBSTANTIVE CONSOLIDATION

13. An application for substantive consolidation of the above cases is being made and the Debtors will request that on Confirmation, the Debtors cases by substantively consolidated. The request for procedural consolidation was approved by Order dated December 19, 2024. As

part of the Plan and reorganization process, the Debtors will be seeking a substantive consolidation whereby the assets and liabilities of the three (3) Debtors will all be consolidated and each creditor may look at all of the assets of the three (3) Debtors.

14. All three (3) Debtors have claims alleged against it. The Litigation Creditor, Kashmir Gill, holding a claim in the amount of approximately $2,178,904 has asserted claims against all three (3) Debtors. Most of the assets are owned by Jus Broadcasting Corporation having a value as of January 31, 2025, of approximately $249,000 with the balance of the assets being held by Jus One Corp. in the amount of $32,000 and Jus Punjabi LLC in the amount of $48,000 as reflected on the Monthly Operating Reports. Jus Broadcasting Corporation, thus, holds a substantial interest in the assets holding approximately 75.6% of the total assets with the remaining assets being more of an encumbrance in light of the fairly minimal amounts. Jus Broadcasting Corporation is the entity that reports the receipts and disbursements for all three (3) companies and is the entity that executes contracts and other operational matters.

15. Jus Broadcasting Corporation is scheduled as having approximately $3,150,000 in liabilities including JP Morgan Chase Bank secured claim in the amount of $237,940, secured claims relating to vehicles in the amount of $181,675.39 and EDIL secured claim in the amount of $2,198,650.71.

16. The Plaintiffs in litigation have alleged that the Debtors were transferring assets to each other without reporting the transfers or disclosing the reasons for the transfers (See *Kashmir Gill v. Jus Broadcasting Corporation et al.*, Index No. 19-cv-04216 (DLI)(PK)) (see Expert's Appraisal – Pages 6-7 – (see Exhibits A, B, C and D); see *Karl Khandalavala v. Jus Punjabi LLC and Penny K. Sandhu* – Index No. 655199/2023). The Debtors deny these allegations but it is

12

clear that the consolidation will clearly remove a number of the issues regarding these transfers and simplify the course of the litigation. Thus, any claim against any Debtor will constitute a claim against all three (3) Debtors.

17.     The substantive consolidation does not include a consolidation of the assets of a Indian company entitled Jus Broadcasting PVT LLC ("*PVT*"). Although PVT is named as a defendant in the Kashmir Gill litigation, PVT is not named in the Karl Khandalavala litigation. At the Section 341 Meeting, the Debtor provided the information to the United States Trustee that the Debtor's principal, Penny K. Sandhu, has a minimal ownership interest in PVT of less than 5% and does not control any of the operations of PVT. The Experts Report, prepared by Kashmir Gill, does not appear to raise any questions about the transfers of assets from the American companies to PVT.

18.     The cost of filing three (3) separate Plans and Disclosure Statements, in this fairly minimal case, is prohibitive. The results of a consolidation will minimize the efforts to maintain three (3) separate operations when, as a matter of fact, the three (3) Debtors have been acting as one entity for years before filing for Chapter 11.

## THE LAW

19.     It is well established that:

> "Substantive consolidation derives from the bankruptcy court's general equitable powers provided in section 105(a) of the Bankruptcy Code. *Federal Deposit Ins. Corp. v. Colonial Realty Co.*, 966 F.2d 57, 58 (2d Cir.1992); *In re Deltacorp, Inc.*, 179 B.R. 773, 777 (Bankr. S.D.N.Y.1995) (citations omitted). "*The substantive consolidation of estates in bankruptcy effects the combination of the assets and the liabilities of distinct, bankrupt entities and their treatment as if they belonged to a single entity*." *Colonial Realty Co.*, 966 F.2d at 58 (citing 5 L. King Collier on

Bankruptcy, ¶ 1100.06 at 1100–33 (15 ed. 1991)).” *In Re Leslie Fay Companies, Inc.*, 207 B.R. 764, 779 (Bankr. S.D.N.Y. 1997).

20.     When estates are substantively consolidated, the separate estates are merged “into one estate for distributive purposes. Usually, the assets and liabilities are shared, with duplicate claims being eliminated and intercompany claims being extinguished.   *In re Deltacorp, Inc.*, 179 B.R. at 777 (footnote and citation omitted).   *Leslie Fay*, 207 B.R. at 779.   Indeed the “*sole purpose of substantive consolidation is to ensure the equitable treatment of creditors*.” *Id*.

21.     The factors to be considered in determining whether a substantive consolidation is warranted includes:

(a)     The presence or absence of consolidated financial statements.

(b)     The unity of interests and ownership between the various corporate entities.

(c)     The degree of difficulty in segregating and ascertaining individual assets and liabilities.

(d)     The existence of transfers of assets without formal observance of corporate formalities.

(e)     The comingling of assets and business functions.

(f)     The profitability of consolidation at a single physical location.

*In re Donut Queen Ltd.*, 41 B.R. 706, 709 (Bkrtcy. E.D.N.Y. 1984).

22.     The objective criteria are not exhaustive, and no set of factors automatically mandates substantive consolidation *In re Cooper*, 147 B.R. 678 (Bkrtcy. D.N.J. 1992).   Although the factors are guideposts established to assist the judgment of the Bankruptcy Court in reaching a finding on the issue of substantive consolidation.   *First Nat’l Bank of El Dorado v. Giller*, 962 F.2d 796, 799 (8th Cir. 1992).

23.     It is clear, based on the above, that the three (3) Debtors cases should be substantively consolidated and for the creditors to be paid in a ratable and equal fashion in light of the interchangeability of the unsecured claims and the secured claims, the difficulties in segregating the distributions to each of the creditors, the cost in filing and operating three (3) different Chapter 11 Plans and the existence of Jus Broadcasting Corporation as the holder of nearly all of the assets and the debt, both allowed and disputed.

**SECURED CREDITORS**

24.     JP Morgan Chase Bank (the "*Chase*") entered into a secured line of credit borrowing with the Debtors, Jus Broadcasting Corporation, and filed UCC Financing Statements on November 23, 2020, in connection therewith granting a security interest in all present and future inventory, chattel paper, accounts, equipment and general intangibles and all proceeds.    Chase is owed $239,229.37 as of the Chapter 11 filing.

25.     CESC-COVID EIDL Service Center ("*EIDL*") entered into a loan agreement (the "*Loan Agreement*") with the Debtors for a borrowing in the amount of $2,000,000 pursuant to the Loan Agreement secured and filed UCC Financing Statement dated September 28, 2021, on all inventory, equipment, instruments, including promissory notes, chattel paper, documents, letter of creditor rights, accounts, and credit card receivables, deposit accounts, commercial tort claims and general intangibles.

26.     Pursuant to an Order dated April 10, 2025, the Debtors are authorized to use the cash collateral of these Secured Creditors in the course of its operations of its business and grant replacement liens to these creditors for the use.    The Debtors have continued to make the required monthly payments to these creditors.

27.     The Debtors are involved in one (1) remaining long lasting litigation which consumed the Debtor's time and energy and incurred substantial attorney's fees.

28.     The litigation involved a Plaintiff (*Kashmir Gill v. Jus Broadcasting, Jus Punjabi LLC, Jus One Corp., Penny K. Sandhu* (Index No. 19-04216 (DLI)(PK)) pending in United States District Court, Eastern District of New York, alleging approximately $2,178,904 in damages, who asserted that he was an investor in the television network without any documentation or other substantiation and requested a partnership interest.   The Court ordered mediation. However, no mediation proceeding was commenced or was undertaken.   There is no indication that this case was or is ready for trial.   Pursuant to the Notice of Removal dated January 23, 2025, a Motion was made seeking to have this litigation removed to the Bankruptcy Court.

29.     The second litigation entitled *Karl Khandalavala II v. Penny K. Sandhu and Jus Punjabi LLC* (Index No. 655199/2023), pending in the New York State Supreme Court – County of New York, involved a claim by the Plaintiff against 10% of one channel owned by Jus Punjabi LLC.   Previously the Debtors paid $600,000 of an agreed $660,000 amount which would release all claims as to the channel.   This Plaintiff/Creditor failed to file a claim in this case.   The Petition reflected this Creditor's claim to be disputed and accordingly this Creditor is no longer a creditor.

30.     The third litigation entitled *Saim Naqvi v. Jus Broadcasting Corporation* (Index No. 605545/2019), pending in the New York State Supreme Court – County of Nassau, involved the claim by the Plaintiff that he was employed as a salesperson and entitled to a salary of three (3) years during the period of his alleged employment.   The Debtors posted a bond of $135,000 after the Trial, which was held on October 30, 2023, to secure the Judgment against the Debtors.

The Judgment related to an award of $106,000 plus additional interest and charges. On June 17, 2024, the Plaintiff made a motion in the Court to enhance the bond to include all post-judgment interest.

31. The Debtors determined to settle this last litigation by consenting to the Plaintiff's withdrawing the collateral posting the Bond and releasing the Debtors of all other claims. This was approved by an Order of the Court dated February 21, 2025.

**CHAPTER 11 FILING**

32. On December 11, 2024, the Debtors filed a petition under Chapter 11 of the Bankruptcy Code. Thereafter, the Debtors arranged to complete the filing of the Petition, Schedules and Statement of Financial Affairs, to attend the IDI Meeting, Section 341 Meeting and Initial Case Conference.

33. The Court directed that the Debtors submit a Cash Collateral Stipulation with the Mortgagee. On March 13, 2025, the Court entered an Order for a Bar Date. The Bar Date is scheduled for April 30, 2025.

34. On December 17, 2024, the Debtors made its Motion for the Conditional Use of Cash Collateral. The Debtors continued to work out the terms of a Cash Collateral Stipulation with the Mortgagee. On January 2, 2025, the Court approved the use of cash collateral. The Debtors finalized the adequate protection stipulation. On January 2, 2025, the Court entered the Order approving the Cash Collateral Stipulation and the Debtors began making payments of $3,500, increased to $4,000 per month, to JP Morgan Chase and $1,000 to EDIL.

**VALUE OF THE BUSINESS OF THE DEBTORS**

35. During the course of the litigation with Kashmir Gill, Plaintiff Gill submitted a

Valuation Report dated June 20, 2023 (*Exhibit A*), (*Exhibit B*), (*Exhibit C*) and (*Exhibit D*), which reflected Plaintiff's belief of the value of the Fair Market Value of the controlling non-marketable interest of the Debtors as of December 31, 2019, to be $325,000.   This report was prepared by Marsan Associates, PC using various methods under the standards provided by the American Institute of Certified Public Accountants using a market value approach, an income approach, a discount in capitalization rate approach, and an appraisal of the assets.   This report reserved their opinion based on the fact that the expert had not been provided with tax returns for the years 2020 through 2023 among other things.   The tax returns for those years are being provided to any creditor wishing to inspect those tax returns who request copies of such tax returns.   The analysis also predicted the annual income for the years in question.   The annual income for the years 2020 through 2023 has been less than the net income up through December 2019.

36.     The value of the business may also be calculated based on the market value of the assets, including the camera equipment and other recording equipment used in the Debtors business.   As was noted in the Gill Report, with respect to these types of assets

> *"An appraisal of the condition and age of the equipment has not been performed and we are not aware of the marketability of such equipment in the secondary marketplace.   Accordingly, we have assumed that a discounted original cost would at best be the fair market value.   In most circumstances, the computer and equipment and software have short life expectancies as technological changes make them obsolete with a 3 to 5-year period.   Accordingly, we have not assigned significant weight to the fixed assets."*   (Gill Report – Page 11).

37.     The Debtors accountants, KSR Financial Solutions, prepared a report dated March 21, 2025 (see *Exhibit E*), valuing the Fair Market Value of the Debtors, Jus Broadcasting Corporation, to be in the range of $250,000 to $400,000 under several industry standard methods.

**DEBTORS' OPERATIONS**

38.     The Debtors have been operating at a profit since the December 2024 filing.   The Debtors have initiated certain changes to minimize expenses.   The Debtors anticipate that these operations will not significantly change over the course of the next three (3) to five (5) years.

**SOURCE OF FUNDS FOR PLAN**

39.     The Debtors will have obtained the necessary funds from internal cash flow and commitments by Penny K. Sandhu, the Debtor's principal.

**SUMMARY OF PLAN**

40.     The Plan is composed of five (5) classes of creditors and one (1) class of equity holders.

41.     ***Class 1***          *Class 1* is the claim of JP Morgan Chase ("*JP Morgan Chase*") pursuant to a line of credit in the amount of approximately $239,229.37.     *Class 1* creditor shall be paid 100% of its claim at a 6.5% rate of interest, per annum, payable in monthly installments of $4,036 per month commencing on the Effective Date and continuing up through six (6) years after the Effective Date constituting payment in full of the amounts due to JP Morgan Chase.   JP Morgan Chase shall retain its first position priority security interests in the collateral in which JP Morgan Chase had pre-petition security interests prior to the Chapter 11 filing.   This Class is impaired and may vote on the Plan.

42.     ***Class 2***          *Class 2* is the claim of CESC-COVID EIDL Service Center ("*EIDL*").   This creditor shall be paid in monthly installments in the amount of $2,500 per month commencing on the Effective Date and up through two (2) years after the Effective Date, and     the parties shall negotiate the terms or resolution of the claim for each of the following two (2) years

thereafter and such creditor shall retain its second position priority security interests in the collateral in which EIDL had pre-petition security interests prior to the Chapter 11 filing. This creditor is impaired and shall vote for the Plan.

43.   **_Class 3a_**      *Class 3a* is the claim of Secured Vehicle Creditor Mercedez Benz ("_Mercedes Benz_") with respect to the Mercedes GLE450W4. This creditor shall be paid $1,842.54 per month for three (3) years from the Effective Date for a total of $66,312 representing an amount greater than the amount owed to the creditor. Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments.

44.   **_Class 3b_**      *Class 3b* is the claim of Secured Vehicle Creditor Ally Bank ("_Ally Bank_") with respect to the Chevy Truck – Model 3500. This creditor shall be paid $1,250 per month for three (3) years from the Effective Date for a total of $45,000 representing an amount greater than the value of the vehicle ($43,000). Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments.

45.   **_Class 3c_**      *Class 3c* is the claim of Secured Vehicle Creditor Stellantis Financial Services ("_Stellantis Financial_") with respect to the 2023 Chrysler Pacifica. This creditor shall be paid $583 per month for three (3) years from the Effective Date for a total of $21,000 representing an amount greater than the present value of the vehicle ($19,000). Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments.

46.   **_Class 4_**      *Class 4* is the claims of Unsecured Creditors of approximately $840,632, consisting of unsecured taxes, utilities, credit card and former attorney of the Debtors.

These creditors shall be paid a total of 10% of their Allowed claims payable in ten (10) installments with each installment in the amount of one tenth (1/10) of such 10% amount, without interest, commencing on the anniversary of the Effective Date each year, for a period of ten (10) years.

47.     **_Class 5_**          *Class 5* is the claim of Kashmir Gill ("*Gill*") in the amount of $2,178,904.   An Adversary Proceeding has commenced to subordinate the claims of Gill to the claims of all creditors pursuant to § 510 of the Bankruptcy Code as claims arising out of the purchase of securities of the Debtors.   This creditor's claim is subordinate to the extent of $2,664,070.80 subordinate to all other creditors in this case, and, as a negative deficit value equal to minus $2,319,070.80 representing the sum of $2,664,070.80 in claims less $325,000 in the valuation of the assets as determined in creditor Gill's litigation papers which were filed in the New York State Supreme Court.   The Debtor objects to this litigation claim.   This claim, which the Debtors allege is subordinated pursuant to §510 of the Bankruptcy Code, is a claim arising out of a purchase of "*securities*" of the Debtors, shall receive a distribution equal to 10% of the distribution payable to general unsecured creditors (*Class 4*) over ten (10) years, without interest, in equal monthly payments commencing on the Effective Date.   Penny K. Sandhu will make these payments from her personal resources.

48.     **_Class 6_**          *Class 6* is the equity interest of Penny K. Sandhu, which equity interest is being cancelled, and the new equity interest is being purchased by Ms. Sandhu, who shall retain her equity interests in the Debtors in consideration for paying the Gill distribution and for agreeing to make payments of any administrative obligations.   On or before Confirmation, the Debtors and Ms. Sandhu will enter into an Employment Agreement pursuant to which, for a period of five (5) years, Ms. Sandhu will act as President and Chief Operating Officer of the Debtors at a

salary of $50,000 or to be agreed upon with annual increases and addition fringe benefits as is presently provided. It will be the function of Ms. Sandhu to make all operational decisions involving the Debtors in the nature of their business. The Debtors acknowledge that Ms. Sandhu's value to the Debtors is well in excess of the salary being proposed and will seek to accommodate, reasonably, with all of Ms. Sandhu's requests. This Class is deemed impaired and shall vote on the Plan.

### ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

49.     Chapter 11 administration creditors, including the attorneys and accountants for the Debtors who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code. Any party requesting claims for professional fees must file an application with the Court, upon notice, to all creditors and be awarded fees after a hearing in order to be entitled to be paid. All of the within claims may be paid under a different agreement reached with the Debtors prior to Confirmation. No Court Orders or Fee Application shall be required for attorneys or accountants for services rendered subsequent to the Confirmation Date.

50.     The Debtors have certain priority claims including tax claims and claims owing to governmental entities. The Debtors may object to all or some of these claims. These claims total approximately $135,000. Priority claims shall be paid in accordance with §1129 of the Bankruptcy Code.

51.     Unless otherwise provided for in the Confirmation Order or other award of the Court, fees and expenses incurred for services after the Confirmation Date to the Debtors by one or more professionals retained in these proceedings in furtherance of carrying out the terms and conditions of this Plan shall be paid as provided herein. A written invoice or statement

accompanied by supporting time records and an itemization of time records shall be submitted to the Debtors.     All monthly bills shall be paid by the Debtors within 20 business days on account thereof unless the Debtors notifies the professional in writing of the objection thereto within this period of time.   This objection shall also be served on counsel for the Debtors. In the event that such objections cannot be resolved consensually any fees requested in excess of the amount stated above or which an objection is raised shall be resolved at a hearing before the Bankruptcy Court.

## UNITED STATES TRUSTEES FEES UNDER 28 U.S.C. 1930

53.     The Debtors shall pay U.S. Trustee quarterly fees pursuant to 28 U.S.C. §1930 (and any applicable interest thereon) until the case is closed, by means of a Final Decree, converted to a Chapter 7 or dismissal, whichever happens sooner.   Such fees are payable to the Office of the United States Trustee under 28 U.S.C. 1930 are not classified and shall be paid in full their Allowed Administrative expenses on the Effective Date.   All subsequent United States Trustee fees shall be timely paid by the Debtors.   All reports required by the United States Trustee shall be properly and timely filed.

## IMPLEMENTATION OF PLAN

54.     The Debtors shall enter into an Employment Agreement with Penny K. Sandhu providing for continued employment as President and Chief Operating Officer for next five (5) years from the Effective Date at a salary of $50,000 plus all fringe benefits as she presently enjoys. The Debtors shall continue to operate and make payments as described in the Plan.   The Debtors shall amend the Corporate Charter and New York State filings to reflect the substantive consolidation affected herein.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

55.     ***Time Limit for Objections to Claims***.    Objections to Claims shall be filed by the Debtors with the Court and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court.    Unless otherwise extended by Order of the Court, the Debtors may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the later of sixty (60) days following the Confirmation Date or within thirty (30) days after the filing of such Claim and service of a copy of such Claim upon the Debtors as provided for in the Plan.    Any claim objections that may be filed shall be served on the Office of the United States Trustee.

56.     ***Resolution of Disputed Claims***.    Unless otherwise ordered by the Court, the Debtors shall litigate, to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days' notice, as between the Debtors and the Creditor of the claim who is being objected to.

57.     ***Payments***.    Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the class of Creditors to which the respective holder of an Allowed Claim belongs. Reserves may be maintained.    Such payments and distributions shall be made as soon as practicable after the date that the Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter.    Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtors and such a Claimant or as allowed by this Plan.

## THE REORGANIZED DEBTORS

58.     At Confirmation, the Debtors will have achieved a reorganization involving the various claims of all the creditors.     The Reorganized Debtors shall continue to maintain ownership of its business subject to the treatments described above.     The reorganization Debtors shall commence objections to claims.     Annexed hereto is a pro forma Confirmation Balance Sheet (*Exhibit F*).     The Reorganized Debtors shall provide by amendment a provision in its Charter that prohibits the issuance of any non-voting equity interests, to the extent such provisions are appropriate and legal under New York State Corporation Law.

59.     In all other respects, the corporate existence of the Debtors corporation shall continue unabated, including the corporate charter, the by-laws and other corporate documents.

## OFFICERS AND DIRECTORS AND MEMBERS

60.     Penny K. Sandhu shall continue to act as President and Chief Operating Officer of the Debtors under the terms of an Employment Agreement.     She will arrange for the Debtors to continue to make payments on behalf of the Debtors to the secured creditors and to the unsecured creditors.

## THE LIQUIDATION ANALYSIS

61.     The Debtors believe that the only alternative to confirming this Chapter 11 Plan is either a dismissal of the case or a conversion of this case to a case under Chapter 7 of the Bankruptcy Code.     Annexed hereto is a Liquidation Analysis of the Debtor's assets, prepared by the Debtors (*Exhibit G*).     The analysis represents the Debtor's effort to estimate the results of an immediate liquidation on or about the date of Confirmation, calculated to be some time in the Spring of 2025.     Against the liquidation value of the Real Property, there exists expenses in the Chapter 7 liquidation as well as in the Chapter 11 case which will be required to be paid.     It is

quite clear that creditors will fare worse in the event there is a liquidation than they would under the Plan.

62.     The Debtors believe that this establishes that the Debtors will be able to establish, under the terms of this Plan, that it has met one of the requirements to confirm a Plan, which is that the treatment under the Plan provides creditors with not less than such creditors would receive in liquidation.

## FEASIBILITY

63.     The Debtors believe the Plan to be feasible.    The Projections (*Exhibit H*) establish that the Debtors will net in excess of $200,000 per year for 20206 (the first full year after the Effective Date) and will generate even more net income in the following years which will be more than enough to cover the payments to the creditor classes under the Plan.

## EXECUTORY CONTRACTS

64.     The Debtors hereby rejects all contracts as of the Petition Date except for contracts specifically assumed prior to the Confirmation Date.

## MODIFICATION OF PLAN

65.     The Debtors may amend and modify this Plan at any time prior to the Confirmation Order, without approval of the Court after Confirmation, the Debtors may modify this Plan before a substantial Consummation of this Plan, with the approval of this Court.    Post-Confirmation, any material modification of the Plan would need to be subject to notice, a Court Order, after a hearing, and an opportunity to object.

## TAX IMPLICATIONS

66.     The Debtors is not aware of any significant tax implication which would inure, to the Debtors, as a result of the filing, and confirming of this Plan other than as stated herein.   The Debtors suggests that creditors consult their tax advisors with respect to the implication of the Plan and the confirmation upon such creditors.

## TAX EXEMPTION

67.     Under § 1146 of the Bankruptcy Code, the Debtors shall be exempt from all taxes, transfer fees and recording charges for transactions being necessary for, provided for or contemplated under the Plan, for which transactions, taxes, transfer fees and recording charges which may be exempted under § 1146 of the Bankruptcy Code.

## PROVISIONS FOR CLASSES OR HOLDERS OF CLAIMS
## WHICH ARE AFFECTED BY AND DO NOT ACCEPT THE PLAN

68.     Any class or holders of claims or interests which are affected by and do not vote to accept the Plan in accordance with the provisions of Bankruptcy Code § 1126 shall be treated in a fair and equitable fashion as provided by Bankruptcy Code § 1129(b).

## EVENT OF DEFAULT

69.     The occurrence of any one of the following shall constitute a default by the Debtors under the Plan.

70.     If   (a) the Debtors defaults in making payments due under the Plan (and the grace period provided for herein shall have passed), and unless such default (hereinafter referred to as an "*Event of Default*") has been waived in accordance with the terms herein; (b) the Debtors breaches any of the covenants contained herein prior to payment of payments due under the Plan; (c) the Debtors seeks relief under any Federal or State statute (other than the Debtor's present Chapter 11 case); (d) or a receiver, liquidator, custodian, or trustee is appointed for substantially all of the property of the Debtors prior to completion of the payment of payments due. Upon the

occurrence of an Event of Default, any Creditor shall notify the Debtors therefore, and, with the exception of any monetary default on account of payment, the Debtors shall have ten (10) business days from the date of the sending of such notice, to cure such breach.   With respect to a breach for non-payment, the Debtors shall have a cure period of five (5) business days.   In the event the Debtors fails to cure such breach within the prescribed periods, the Debtors shall be deemed to have defaulted on the terms of the Plan, and the Creditors shall have all rights available to them under State Law or the Bankruptcy Code and the Bankruptcy Rules, or under this Plan including conversion to a Chapter 7 case.

## DISCHARGE AND RELEASE

71.    Pursuant to § 1141(d) of the Bankruptcy Code, the Confirmation Order shall discharge claims against the Debtors.   All claims against third parties for guaranty or other valid and enforceable instruments, shall not be affected by the Confirmation Order.   Except as expressly provided herein, the rights afforded in the Plan and the treatment of all Creditors and holders of Stock Interest and the advance of funds by the equity interests of the Debtors, provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims existing as of the Confirmation Date, of any nature whatsoever, whether known or unknown, contingent or liquidated including any interest accrued or expenses incurred thereon from and after the Debtor's Petition Date, against the Debtors and the Debtors-in-Possession (or any of its properties or interest in properties), and the Professionals representing the Debtors in the Chapter 11 case.   Except as otherwise provided in the Plan, upon the Confirmation Date, all Claims against the Debtors, and the above referred to professionals will be satisfied, discharged and released (except for those obligations identified in the Plan) in full exchange for the consideration provided for hereunder.   All persons and entities shall be precluded from asserting against the

Debtors, its successors, its respective assets or properties and the above-referenced persons and professionals, any other Claims against the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. The Plan does not release any officers, directors and professionals of the Debtors from any claims related to (i) criminal conduct; (ii) gross negligence; (iii) willful misconduct; (iv) fraud and (v) legal malpractice. Any releases to professionals being granted hereunder are subject to the provisions of §1125(e) of the Bankruptcy Code.

72.     The effects of Confirmation of the Plan are set forth in the Bankruptcy Code. The following is a brief summary of the effect of Confirmation upon the Debtors, its creditors and other interested parties. Upon Confirmation, the provisions of the Plan will bind the Debtors, its equity holders and creditors, whether or not they have accepted the Plan. All liens and claims are canceled and extinguished unless dealt with differently in the Plan. The satisfaction of the Debtor's pre-Chapter 11 debts and those incurred subsequently to the commencement of this case all are governed by the Plan.

## INJUNCTION AND EXONERATION

73.     Except as otherwise provided in the Plan or Confirmation Order on and after the Confirmation Date, all entities which have held, currently hold or may hold a debt, claim, other liability of interest against the Debtors pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this Section, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching collecting or recovering in any manner or judgment, award,

decree, order other than as permitted under sub-paragraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

## PREFERENCE AND FRAUDULENT CONVEYANCE ACTIONS

74.     The Debtors has reviewed its books and records and has investigated whether there are any valid causes of action, including proceedings to avoid transfers including, but not limited to, proceedings under 11 U.S.C. 544(b), 547, 548, 549, 550 or applicable State Law.   After analyzing the risks and expenses related to the prosecution of and the limited recovery if any which would inure to the benefit of the creditors in the event that the Debtors would be successful, and the ability to collect on any judgments obtained, the Debtors determined that it does not intend to institute any causes of action for preference or fraudulent conveyance.

## RETENTION OF JURISDICTION BY THE COURT

75.     The Plan provides that the Court shall retain jurisdiction for specified purposes, including without limitation, the determination of all controversies arising under or in regard to the Plan, objections to claims, hearing and determining applications for allowances of compensation and reimbursement of expenses, and the enforcement or continuation of orders entered in this case, until substantial Consummation, and closing of the case.

## EFFECTS OF COURT'S CONFIRMATION
## AND FEASIBILITY OF THE PLAN

76.     Pursuant to § 1141(d) of the Bankruptcy Code, the Confirmation Order shall discharge all claims against the Debtors to the fullest extent permitted by § 1141 of the Bankruptcy Code.   Except as expressly provided herein, the rights afforded in the Plan and the treatment of all Creditors and holders of equity Interests and the advance of funds by the equity interests of the Debtors, provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims existing as of the Confirmation Date, of any nature whatsoever, whether

known or unknown, contingent or liquidated including any interest accrued or expenses incurred thereon from and after the Debtor's Filing Date, against the Debtors (or any of its properties or interest in properties), the Officers, Trustees and Directors of the Debtors, acting in such capacity and the Professionals representing the Debtors in the Chapter 11 case. Except as otherwise provided in the Plan, upon the Confirmation Date, all Claims against the Debtors, and the above referred to professionals will be satisfied, discharged and released (except for those obligations identified in the Plan) in full exchange for the consideration provided for hereunder All persons and entities shall be precluded from asserting against the Debtors, its successors, its respective assets or properties and the above referenced persons and professionals, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, except for Claims arising from gross negligence, willful recklessness, intentional fraud, except for Claims arising from gross negligence, willful recklessness, intentional fraud, willful misconduct, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts or any liability of the Debtor's professionals to their client contrary to the requirements of Rule 1.8(h)(1) of the New York Rules of Professional Conduct, which reads: "*A lawyer shall not (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice.*"

77. The effects of Confirmation of the Plan are set forth in the Bankruptcy Code. The following is a brief summary of the effect of Confirmation upon the Debtors, its creditors and other interested parties. Upon Confirmation, the provisions of the Plan will bind the Debtors, its equity holders and creditors, whether or not they have accepted the Plan. All liens and claims are canceled and extinguished unless dealt with differently in the Plan. The satisfaction of the Debtor's pre-

Chapter 11 debts and those incurred subsequently to the commencement of this case all are governed by the Plan.

## POST-CONFIRMATION

78.     Within 14 days following the full administration of the estate, but not later than 18 months following the entry of the Order confirming the Plan, the Debtors shall file on notice to the United States Trustee, an application and a proposed Order for a Final Decree pursuant to Bankruptcy Rule 3022.

79.     Following the Effective Date of the Plan, the Debtors shall file with the Court quarterly post-confirmation status and disbursements reports, which such reports to be filed (i) each quarter, by the 20th day after the conclusion of the relevant reporting quarter, (ii) utilizing forms promulgated in compliance with 28 CFR §58.8 and (iii) until the entry of a Final Decree closing the case, conversion of the case to Chapter 7, or dismissal, whichever happens earlier.

## ANTICIPATED CONFIRMATION DATE

80.     It is anticipated the Plan will be confirmed by the Bankruptcy Court within forty (40) days, assuming the following events take place:

A.     The Plan is duly accepted by creditors; and

B.     The Bankruptcy Court finds that the Plan is feasible and in the best state of creditors; and

C.     The Court finds that the Plan is fair and equitable and does not discriminate unfairly; and

D.     The Debtors has made arrangement with the professionals

for the payment of these professional fees.

## WHERE TO FILE BALLOTS ON THE PLAN

81.     Pursuant to a Court Order approving this Disclosure Statement, ballots on the Debtor's Plan must be received ten (10) days before the Confirmation Date.   All ballots should be properly completed and forwarded to: Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York, New York 10017, leo@leofoxlaw.com.

Dated: New York, New York
      June 11, 2025

 

*JUS BROADCASTING CORPORATION*
*JUS PUNJABI LLC*
*JUS ONE CORP.*
*Debtors*

By:    */s/ Penny K. Sandhu*
      Penny K. Sandhu

*/s/ Leo Fox*
Leo Fox
*Attorney for Debtors and the*
*Debtors-in-Possession*
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com