UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

IN RE: (Jointly Administered)

| | |
|---|---|
| JUS BROADCASTING CORPORATION, | Case No.   24-45180 (JMM) |
| JUS PUNJABI LLC, | Case No.   24-45181 (JMM) |
| JUS ONE CORP., | Case No.   24-45182 (JMM) |

Debtor.

-------------------------------------------------------------------X

## DEBTORS PLAN OF REORGANIZATION PROPOSED BY THE
## DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of the Debtors or any other party in interest.   This Plan is subject to approval of the Bankruptcy Court and other customary conditions.   This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan.   This Plan may not be served upon creditors until a disclosure statement has been approved by the United States Bankruptcy Court for the Eastern District of New York in accordance with § 1125 of the Bankruptcy Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws.

***YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.***

Leo Fox, Esq.
*Counsel for the Debtors and*
*Debtors-In-Possession*
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

## DEBTORS PLAN OF REORGANIZATION
## <u>DATED JUNE 11, 2025</u>

The above captioned Debtors and Debtors-In-Possession propose this Plan of Reorganization pursuant to § 1121 of the Bankruptcy Code.

## ARTICLE I

## <u>DEFINITIONS</u>

1.1     All terms used in this Plan, unless the context otherwise requires, are as defined in Title 11 of the United States Code.    The following terms have the meaning set forth in this Article I.

| | |
|---|---|
| "*Administrative Claim*" | Allowed claims or requests for payment under § 503(b) entitled to priority under § 507(a)(2) of the Bankruptcy Code. Administrative expenses approved by the Court pursuant to Bankruptcy Code § 503(b). |
| "*Allowed*" | (A) with respect to an Administrative Claim of the kind described in §§ 503(b), (2), (3), (4) or (5) of the Bankruptcy Code, an Administrative Claim that has been Allowed, in whole or in part, by a Final Order; (B) with respect to any other Administrative Claim, including an Administrative Claim of the kind described in § 503(b) an Administrative Claim as to which no objection has been filed; (C) with respect to any Claim that is not an Administrative Claim, a Claim that is either (I) listed on the Schedules or (ii) is not a Disputed Claim or (iii) has been allowed by a Final Order; or (D) with respect to any Equity Security Interest, an Equity Security Interest that is not Disputed, or has been allowed in whole or in part by a Final Order. |

| | |
|---|---|
| "*Bankruptcy Code*" | Title 11 of the United States Code, § 101, <u>et seq</u>. or as amended thereafter in effect as of the Filing Date. |
| "*Chapter 11 Case*" | The Chapter 11 Case (No. 24-45180 (JMM); 24-45181 (JMM) and 24-45182 (JMM) (Jointly Administered) commenced by the Debtors on the Filing Date. |
| "*Claim*" | A Claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtors including, without limitation, claims allowable under § 502 of the Bankruptcy Code or requests for payment of administrative expenses allowed under § 503 of the Bankruptcy Code. |
| "*Claimant*" or "*Creditor*" | The holder of a Claim, including the holder of a claim for damages resulting from the rejection of an unexpired executory contract or lease. |
| "*Closing Expenses*" | Fees and expenses as may be required to close the Chapter 11 Case under applicable law, including, but not limited to, all applicable fees ) including without limitation, United States Trustee Quarterly Fees), taxes, and reasonable attorneys and accounting compensation and reimbursements that may be associated therewith. |
| "*Confirmation Date*" | The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed. |
| ss | |
| "*Court*" | The United States Bankruptcy Court for the Eastern District of New York, or such other court as may from time to time have original jurisdiction over these Chapter 11 proceedings. |
| "*Debtors*" | Jus Broadcasting Corporation, Jus Punjabi LLC and Jus One Corp. |

| | |
|---|---|
| "*Disallowed Claim*" | Any Claim or portion thereof that is determined in a Final Order of the Court not to be allowed pursuant to §§ 502 and 503 of the Bankruptcy Code. |
| "*Disclosure Statement*" | Any disclosure statement required by §1125 of the Bankruptcy Code and approved by the Court. |
| "*Disputed*" | (A) with respect to any Claim other than an Administrative Claim, a Claim (I) that would be deemed filed pursuant to § 1111(a) of the Bankruptcy Code but as to which (A) a proof of claim has been timely filed that is inconsistent in any way with the description or treatment of such Claim in the Schedules, or (B) as to which an objection has been filed, or (ii) that would not be deemed filed pursuant to § 111(a) of the Bankruptcy Code, whether by reason of its exclusion from the Schedules or its description therein as disputed, contingent or unliquidated, but as to which a proof of claim has been filed; or (B) with respect to an Administrative Claim, an Administrative Claim as to which an objection has been filed. |
| "*Distribution*" | A distribution of Cash or Cash equivalents to the holders of Allowed Claims under the Plan. |
| "*Effective Date*" | A date which is the first day of the month following the date that Final Court approvals of the Bankruptcy Court for this Plan have been obtained and the transactions in this Plan have been completed.  The Debtor will file, with the Court, a Notice of the Effective Date of the Plan within three (3) business days of the occurrence of such Effective Date. |
| "*Escrow*" | The amount to be deposited on or prior to the Confirmation Date into the Debtors' attorneys IOLA Escrow Account of (i) all deficiency amounts consisting of the |

difference between all income earned from the two (2) rental apartments at the Real Property less all operating expenses to be paid by the Debtor for a period of 36 months from the Effective Date until the conclusion of the 36-month period at which time a balloon payment is due to the Debtors, as such deficiency amounts are adjusted each six (6) months to reflect changes in either the income or expenses; (ii) all unpaid United States Trustee fees as of the Confirmation Date and (iii) all administrative obligations including, but not limited to, fee applications of professionals retained by Court Order and any other required obligations of the Debtors as of the Confirmation Date.

"*Estate*"

The estate created in this Case pursuant to § 541 of the Code.

"*Filing Date*"

December 11, 2024.

"*First Distribution*"

The date on which all initial Distributions provided for under this Plan have been mailed or otherwise issued to holders of all Allowed Claims.

"*Final Order*"

An Order of a Court from which no appeal or review can be taken, or as to which all appeals and reviews have been withdrawn or dismissed with prejudice.

"*Plan*"

Debtors' Plan of Reorganization or as modified in accordance with the Bankruptcy Code.

"*Real Property*"

The Debtors property located at 36-01 36th Avenue, Long Island City, New York 11106.

"*United States Trustee Fees*"

United States Trustee fees under 28 U.S.C. § 1930 are statutory fees and are not required to have been filed as a request for payment.

# ARTICLE II

## DESIGNATION OF CLAIMS AND INTERESTS

## SUMMARY

2.1     The following classifies claims and equity interests required to be designated in Classes pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code.   In accordance with § 1123(a)(1) of the Bankruptcy Code, the administrative claims and priority tax claims have not been classified and their treatment is set forth herein.   Classification of claims and equity interests in this Plan is for all purposes of confirmation and distribution pursuant to the Plan.   Claims shall be deemed classified in a particular Class only to the extent that such claim qualifies within the description of that Class and shall be deemed different classified in a different class only to the extent that any portion of such claim qualifies within the description of such different class. Notwithstanding the distributions proposed in the Plan, no Distribution on account of any Claim is required or permitted unless and until such Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest which might not occur, if at all, until after the Effective Date.

2.2     The following summarizes all creditors and equity classes, the amount of such claims asserted by such creditors and whether they are impaired.

| Class | Claim | Claim Amount | Treatment | Projected Recovery | Status | Voting Rights |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
| 1 | JP Morgan Chase Bank | $233,960.48 Pursuant to a Line of Credit | This creditor shall be paid 100% of its Allowed claim at a rate of 6.5%, per annum, payable in monthly installments of $4,036 per month commencing on the Effective Date and continuing up through six (6) years after the Effective | 100% | Impaired | Shall vote on the Plan |

| | | | Date constituting payment in full of the amounts due to JP Morgan Chase. JP Morgan Chase shall retain its first position priority security interests in the collateral in which JP Morgan Chase had pre-petition security interests prior to the Chapter 11 filing. | | | |
|---|---|---|---|---|---|---|
| 2 | CESC-COVID EIDL Service Center | $2,198,650.71 | This creditor shall be paid in monthly installments of $2,500 per month commencing on the Effective Date and up through two (2) years after the Effective Date, and the parties shall negotiate the terms or resolution of the claim for each of the following two (2) years thereafter and such creditor shall retain its second position priority security interests in the collateral in which EIDL had pre-petition security interests prior to the Chapter 11 filing. | 100% | Impaired | Shall vote on the Plan. |
| 3a | Secured Vehicle Creditor | (Mercedes-Benz) | With respect to the Mercedes GLE450W4, this creditor shall be paid $1,842.54 per month for three (3) years from the Effective Date totaling $66,312 representing an amount greater than the amount owed to the creditor. Prepayment, without penalty, is permitted | 100% | Impaired | Shall vote on the Plan. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments. | | | |
| 3b | Secured Vehicle Creditor | (Ally Bank) | With respect to the Chevy Truck – Model 3500, this creditor shall be paid $1,250 per month for three (3) years from the Effective Date totaling $45,000 representing an amount greater than the value of the vehicle ($43,000). Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments | 100% | Impaired | Shall vote on the Plan. |
| 3c | Secured Vehicle Creditor | (Stellantis Financial Services) | With respect to the 2023 Chrysler Pacifica, this creditor shall be paid $583 per month for three (3) years from the Effective Date totaling $21,000 representing an amount greater than the present value of the vehicle ($19,000). Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments. | 100% | Impaired | Shall vote on the Plan. |
| 4 | Allowed Unsecured Creditor | | These creditors shall be paid a total of 10% of their Allowed claims payable in ten (10) | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | installments with each installment in the amount of one tenth (1/10) of such 10% amount, without interest, commencing on the anniversary of the Effective Date each year, for a period of ten (10) years. | | | |
| 5 | Kashmir Gil | $2,178,904.08 | *Class 5* is the claim of Kashmir Gill ("*Gill*") in the amount of $2,178,904. An Adversary Proceeding has commenced to subordinate the claims of Gill to the claims of all creditors pursuant to § 510 of the Bankruptcy Code as claims arising out of the purchase of securities of the Debtors. This creditor's claim is subordinate to the extent of $2,664,070.80 subordinate to all other creditors in this case, and, as a negative deficit value equal to minus $2,319,070.80 representing the sum of $2,664,070.80 in claims less $325,000 in the valuation of the assets as determined in creditor Gill's litigation papers | | | |

| | | | which were filed in the New York State Supreme Court. The Debtor objects to this litigation claim. *Class 5* shall receive a distribution equal to 10% of the distribution payable to unsecured creditors payable over ten (10) years in equal monthly installments, without interest, commencing on the Effective Date. Penny Sandhu shall make these payments. | | | |
|---|---|---|---|---|---|---|
| 6 | Penny K. Sandhu | 100 % Equity Owner | The claim of Penny K. Sandhu, which equity interest is being cancelled, and the new equity interest is being purchased by Ms. Sandhu in consideration for paying the Gill distribution and for agreeing to make payments of any administrative obligations. On or before Confirmation, the Debtors and Ms. Sandhu will enter into an Employment Agreement pursuant to which for a period of five (5) years, Ms. Sandhu will enter into an Employment Agreement pursuant to which, for a period of five (5) years, Ms. Sandhu | | Impaired | Shall vote for the Plan |

| | | | will act as President and Chief Operating Officer of the Debtors at a salary of $50,000 or to be agreed upon with annual increases and addition fringe benefits as is presently provided. It will be the function of Ms. Sandhu to make all operational decisions involving the Debtors in the nature of their business. The Debtors acknowledge that Ms. Sandhu's value to the Debtors is well in excess of the salary being proposed and will seek to accommodate, reasonably, with all of Ms. Sandhu's requests. | | | |
|---|---|---|---|---|---|---|

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS
## AND EQUITY INTERESTS

### IMPAIRED CLASSES

1.    3.1    **_Class 1_**        *Class 1* is the claim of JP Morgan Chase ("_JP Morgan Chase_") pursuant to a line of credit in the amount of approximately $239,229.37.    *Class 1* creditor shall be paid 100% of its claim at a 6.5% rate of interest, per annum, payable in monthly installments of $4,036 per month commencing on the Effective Date and continuing up through six (6) years after the Effective Date constituting payment in full of the amounts due to JP Morgan Chase.   JP Morgan Chase shall retain its first position priority security interests in the collateral

in which JP Morgan Chase had pre-petition security interests prior to the Chapter 11 filing. This Class is impaired and may vote on the Plan.

2.    3.2    **_Class 2_**         Class 2 is the claim of CESC-COVID EIDL Service Center ("_EIDL_"). This creditor shall be paid in monthly installments in the amount of $2,500 per month commencing on the Effective Date and up through two (2) years after the Effective Date, and the parties shall negotiate the terms or resolution of the claim for each of the following two (2) years thereafter and such creditor shall retain its second position priority security interests in the collateral in which EIDL had pre-petition security interests prior to the Chapter 11 filing. This creditor is impaired and shall vote for the Plan.

3.3    **_Class 3a_**         Class 3a is the claim of Secured Vehicle Creditor Mercedez Benz ("_Mercedes Benz_") with respect to the Mercedes GLE450W4. This creditor shall be paid $1,842.54 per month for three (3) years from the Effective Date for a total of $66,312 representing an amount greater than the amount owed to the creditor. Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments.

3.4    **_Class 3b_**         Class 3b is the claim of Secured Vehicle Creditor Ally Bank ("_Ally Bank_") with respect to the Chevy Truck – Model 3500. This creditor shall be paid $1,250 per month for three (3) years from the Effective Date for a total of $45,000 representing an amount greater than the value of the vehicle ($43,000). Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments.

3.5    **_Class 3c_**         Class 3c is the claim of Secured Vehicle Creditor Stellantis Financial Services ("_Stellantis Financial_") with respect to the 2023 Chrysler Pacifica. This creditor shall be paid $583 per month for three (3) years from the Effective Date for a total of

$21,000 representing an amount greater than the present value of the vehicle ($19,000). Prepayment, without penalty, is permitted in an amount equal to the unpaid monthly payments less the accrued interest portion of such payments.

3.6 **_Class 4_** _Class 4_ is the claims of Unsecured Creditors of approximately $840,632, consisting of unsecured taxes, utilities, credit card and former attorney of the Debtors. These creditors shall be paid a total of 10% of their Allowed claims payable in ten (10) installments with each installment in the amount of one tenth (1/10) of such 10% amount, without interest, commencing on the anniversary of the Effective Date each year, for a period of ten (10) years.

3.7 **_Class 5_** _Class 5_ is the claim of Kashmir Gill ("_Gill_") in the amount of $2,178,904. An Adversary Proceeding has commenced to subordinate the claims of Gill to the claims of all creditors pursuant to § 510 of the Bankruptcy Code as claims arising out of the purchase of securities of the Debtors. This creditor's claim is subordinate to the extent of $2,664,070.80 subordinate to all other creditors in this case, and, as a negative deficit value equal to minus $2,319,070.80 representing the sum of $2,664,070.80 in claims less $325,000 in the valuation of the assets as determined in creditor Gill's litigation papers which were filed in the New York State Supreme Court. The Debtor objects to this litigation claim. This claim, which the Debtors allege is subordinated pursuant to §510 of the Bankruptcy Code, is a claim arising out of a purchase of "_securities_" of the Debtors, shall receive a distribution equal to 10% of the distribution payable to general unsecured creditors (_Class 4_) over ten (10) years, without interest, in equal monthly payments commencing on the Effective Date. Penny K. Sandhu will make these payments from her personal resources.

3.8 **_Class 6_** _Class 6_ is the equity interest of Penny K. Sandhu, which equity interest is being cancelled, and the new equity interest is being purchased by Ms. Sandhu, who

shall retain her equity interests in the Debtors in consideration for paying the Gill distribution and for agreeing to make payments of any administrative obligations. On or before Confirmation, the Debtors and Ms. Sandhu will enter into an Employment Agreement pursuant to which, for a period of five (5) years, Ms. Sandhu will act as President and Chief Operating Officer of the Debtors at a salary of $50,000 or to be agreed upon with annual increases and addition fringe benefits as is presently provided. It will be the function of Ms. Sandhu to make all operational decisions involving the Debtors in the nature of their business. The Debtors acknowledge that Ms. Sandhu's value to the Debtors is well in excess of the salary being proposed and will seek to accommodate, reasonably, with all of Ms. Sandhu's requests. This Class is deemed impaired and shall vote on the Plan.

### ARTICLE IV

### ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

4.1     Chapter 11 administration creditors, includes the attorneys and accountants for the Debtors who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code. Any party requesting claims for professional fees must file an application with the Court upon notice to all creditors and be awarded fees, after a hearing, in order to be entitled to be paid. The Debtors agree to pay any administrative expenses or United States Trustee fees to the extent that the Debtors lacks funds to make such payment. All of the within claims may be paid under a different agreement reached with the Debtors prior to confirmation. No Court Orders or Fee Application shall be required for attorneys or accountants for services rendered subsequent to the Confirmation Date.

4.2     The Debtors shall pay U.S. Trustee quarterly fees pursuant to 28 U.S.C. §1930 (and any applicable interest thereon) until the case is closed, by means of a Final Decree, converted to

a Chapter 7 or dismissal which ever happens sooner. Such fees are payable to the Office of the United States Trustee under 28 U.S.C. §1930 are not classified and any balance shall be paid in full on the Effective Date.

**ARTICLE V**

**IMPLEMENTATION OF PLAN**

5.1    The Debtors shall enter into an Employment Agreement with Penny K. Sandhu providing for continued employment as President and Chief Operating Officer for next five (5) years from the Effective Date at a salary of $60,000 plus all fringe benefits as she presently enjoys. The Debtors shall continue to operate and make payments as described in the Plan. The Debtors shall amend the Corporate Charter and New York State filings to reflect the substantive consolidation affected herein.

**ARTICLE VI**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

6.1    ***Time Limit for Objections to Claims***.    Objections to the amounts and priorities of Claims shall be filed by the Debtors with the Court and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of the Court, the Debtors may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the later of thirty (30) days following the Confirmation Date or within thirty (30) days after the filing of such Claim and service of a copy of such Claim upon the Debtors as provided for in the Plan. Any claim objections that may be filed shall be served on the Office of the United States Trustee.

6.2     ***Resolution of Disputed Claims***.    Unless otherwise ordered by the Court, the Debtors shall litigate, to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days notice, as between the Debtors.

6.3     ***Payments***.    Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the Court enters a Final Order allowing such Claim, and fixing the priority of such Claim, but not later than thirty (30) days thereafter.    During the period that such Claims are the subject of an objection to the allowability, amount or priority, the Debtors shall make payments to the Debtors' insolvency attorneys in Escrow, to be held until such time, and to the extent of a Final Order making a determination on the amount and priority of such Claims.

## ARTICLE VII

## THE REORGANIZED DEBTOR

7.1     At Confirmation, the Debtor will have achieved a reorganization involving the various claims of all the creditors.    The Reorganized Debtors shall continue to maintain ownership of their business subject to the treatments described above.    The reorganization Debtors shall commence objections to claims.    Annexed hereto is a pro forma Confirmation balance sheet (_Exhibit A_).    The Reorganized Debtors shall provide by amendment a provision in its Charter that prohibits the issuance of any non-voting equity interests, to the extent such provisions are appropriate and legal under New York State Corporation Law.

7.2     In all other respects, the corporate existence of the Debtors corporation shall

continue unabated, including the corporate charter, the bylaws and other corporate documents.

## ARTICLE VIII

## OFFICERS, DIRECTORS AND MEMBERS

8.1    Penny K. Sandhu shall continue to act as President, Secretary and Treasurer of the Debtors.    She shall not be paid for the services.

## ARTICLE IX

## EXECUTORY CONTRACTS

9.1    The Debtors hereby rejects all contracts as of the Petition Date.    The Debtors shall reject any remaining executory contracts on Confirmation, other than the leases and executory contracts being specifically assumed or otherwise dealt with during this Chapter 11 case and as set forth herein.    Any person holding claims as a result of the rejection of any lease or executory agreement may file a claim with the Bankruptcy Court within thirty days of the rejection.

## ARTICLE X

## MODIFICATION OF PLAN

10.1    The Debtors may amend and modify this Plan at any time prior to the Confirmation Order, without approval of the Court. After Confirmation, the Debtors may modify this Plan before a substantial Consummation of this Plan, with the approval of this Court.    Post-Confirmation, any material modification of the Plan would need to be subject to notice, a Court Order, after a hearing, and an opportunity to object.

## ARTICLE XI

## TAX IMPLICATIONS

11.1    The Debtors are not aware of any significant tax implication which would inure to the Debtors as a result of the filing and confirming of this Plan other than as stated herein.    All

creditors with known claims are being paid 100% of their Allowed claims. The Debtors suggests that creditors consult their tax advisors with respect to the implication of the Plan and the confirmation upon such creditors.

## ARTICLE XII

### PROVISIONS FOR CLASSES OR HOLDERS OF CLAIMS
### WHICH ARE AFFECTED BY AND DO NOT ACCEPT THE PLAN

12.1    Any class or holders of claims or interests which are affected by and do not vote to accept the Plan in accordance with the provisions of Bankruptcy Code § 1126 shall be treated in a fair and equitable fashion as provided by Bankruptcy Code § 1129(b).

## ARTICLE XIII

### EVENT OF DEFAULT

13.1    The occurrence of any one of the following shall constitute a default by the Debtors under the Plan:

13.2    If    (a) the Debtors defaults in making payments due under the Plan (and the grace period provided for herein shall have passed), and unless such default (hereinafter referred to as an "*Event of Default*") has been waived in accordance with the terms herein; (b) the Debtors breaches any of the covenants contained herein prior to payment of payments due under the Plan; (c) the Debtors seeks relief under any Federal or State statute (other than the Debtors' present Chapter 11 case); (d) or a receiver, liquidator, custodian, or trustee is appointed for substantially all of the property of the Debtors prior to completion of the payment of payments due. Upon the occurrence of an Event of Default, any Creditor shall notify the Debtors therefore, and with the exception of any monetary default on account of payment, the Debtors shall have ten (10) business days from the date of the sending of such notice, to cure such breach. With respect to a breach

for non-payment, the Debtors shall have a cure period of five (5) business days.    In the event the Debtors fails to cure such breach within the prescribed periods, the Debtors shall be deemed to have defaulted on the terms of the Plan, and the Creditors shall have all rights available to them under State Law or the Bankruptcy Code and the Bankruptcy Rules, or under this Plan including conversion to a Chapter 7 case.

## ARTICLE XIV

## DISCHARGE AND RELEASE

14.1    Pursuant to § 1141(d) of the Bankruptcy Code, the Confirmation Order shall discharge claims against the Debtors.    All claims against third-parties for guaranty or other valid and enforceable instruments shall not be affected by the Confirmation Order.    Except as expressly provided herein, the rights afforded in the Plan and the treatment of all Creditors and holders of Stock Interest and the advance of funds by the equity interests of the Debtors, provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims existing as of the Confirmation Date, of any nature whatsoever, whether known or unknown, contingent or liquidated including any interest accrued or expenses incurred thereon from and after the Debtors' Petition Date, against the Debtors and the Debtors-in-Possession (or any of its properties or interest in properties), and the Professionals representing the Debtors in the Chapter 11 case.    Except as otherwise provided in the Plan, upon the Confirmation Date, all Claims against the Debtors, and the above referred to professionals will be satisfied, discharged and released (except for those obligations identified in the Plan) in full exchange for the consideration provided hereunder.    All persons and entities shall be precluded from asserting against the Debtors, their successors, their respective assets or properties and the above referenced persons and professionals, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that

occurred prior to the Confirmation Date. The Plan does not release any officers, directors and professionals of the Debtors from any claims related to (i) criminal conduct; (ii) gross negligence; (iii) willful misconduct; (iv) fraud and (v) legal malpractice. Any releases to professionals being granted hereunder are subject to the provisions of § 1125(e) of the Bankruptcy Code.

14.2    The effects of Confirmation of the Plan are set forth in the Bankruptcy Code. The following is a brief summary of the effect of Confirmation upon the Debtors, its creditors and other interested parties. Upon Confirmation, the provisions of the Plan will bind the Debtors, its equity holders and creditors, whether or not they have accepted the Plan. All liens and claims are canceled and extinguished unless dealt with differently in the Plan. The satisfaction of the Debtors' pre-Chapter 11 debts and those incurred subsequently to the commencement of this case all are governed by the Plan.

## ARTICLE XV

## <u>INJUNCTION AND EXONERATION</u>

15.1    Except as otherwise provided in the Plan or Confirmation Order on and after the Confirmation Date, all entities which have held, currently hold or may hold a debt, claim, other liability of interest against the Debtors pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this Section, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching collecting or recovering in any manner or judgment, award, decree, order other than as permitted under sub-paragraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

## ARTICLE XVI

## POST-CONFIRMATION

16.1    Within 14 days following the full administration of the estate, but not later than 18 months following the entry of the Order confirming the Plan, the Debtors shall file on notice to the Untied States Trustee, an application and a proposed Order for a Final Decree pursuant to Bankruptcy Rule 3022.

16.2    Following the Effective Date of the Plan, the Debtors shall file with the Court quarterly post-confirmation status and disbursements reports, with such reports to be filed (i) each quarter, by the 20th day after the conclusion of the relevant reporting quarter, (ii) utilizing forms promulgated in compliance with 28 CFR §58.8 and (iii) until the entry of a final decree closing this case, conversion of the case to Chapter 7, or dismissal, whichever happens earlier.

## ARTICLE XVII

## RETENTION OF JURISDICTION AND DISCHARGE

16.1    Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    Determination of the allowability of Claims upon objections filed to such Claims;

(b)    Determination of requests for payment of Claims and fees entitled to priority under § 507;

(c)    Resolution of any disputes concerning the interpretation of the Plan;

(d)    Implementation of the provisions of the Plan;

(e)    Entry of Orders in aid of Consummation of the Plan;

(f)    Modification of the Plan pursuant to § 1127 of the Code;

(g)    Adjudication of any causes of action including voiding powers

actions commenced by the Debtors-in-Possession;

(h)     Entry of a Final Order of Consummation and closing the case; and

(i)     To hear and consider final professional fee applications by the

professionals.

Dated:  New York, New York
        June 11, 2025

                                        **JUS BROADCASTING CORPORATION**
                                        **JUS PUNJABI LLC**
                                        **JUS ONE CORP.**
                                        **Debtors**

                                        By:     **/s/ Penny K. Sandhu**
                                                Penny K. Sandhu

**/s/ Leo Fox**
Leo Fox, Esq.
*Attorney for Debtors and*
*Debtors-in-Possession*
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com