| | |
|---|---|
| **JACOBS, P.C.** | **HEARING DATE:** July 23, 2025 |
| *Attorneys for Creditor* | **HEARING TIME:** 10: a.m. |
| *Kashmir Gill* | |
| 717 Fifth Avenue -17th Floor | |
| New York, New York 10022 | |
| 212-229-0476 | |
| Wayne M. Greenwald | |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
In re:

| | |
|---|---|
| | Administratively Joined |
| JUS ONE CORP., | Case No.: 24-45180-JMM |
| JUS BROADCASTING CORPORATION, | Case No.: 24-45181-JMM |
| JUS PUNJABI LLC, | Case No.: 24-45182-JMM |
| Debtors, | Chapter 11 |

_____

**OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT**
**WITH POINTS AND AUTHORITIES**

**HON. JIL MAZER-MARINO**
**UNITED STATES BANKRUPTCY JUDGE**

Kashmir Gill, by his attorneys represents:

**PRELIMINARY STATEMENT**

1. Kashmir Gill is a creditor of the referenced Debtors. He holds what is probably the largest claim in each of the Debtors' case: $2,178,904.

2. Mr. Gill objects to the Debtors' request for orders, pursuant to 11 U.S.C. § 1125 and Fed.R.Bankr.P. 3016, approving the adequacy of the "Debtors' Disclosure Statement under Chapter 11 of the Bankruptcy Code Proposed by

- 1 -

the Debtors" (the "Disclosure Statement") concerning the "Debtors Plan of Reorganization Proposed by The Debtors Pursuant to Chapter 11 of the Bankruptcy Code " (the "Plan" ECF # 95 ) (the "Application").

3. The Application should be denied because the Disclosure Statement fails to provide:

    A.) "adequate information" to enable the Debtors' creditors to "make an informed judgment about" whether they should vote to accept or reject the Plan;

    B.) identify the risks related to the Plan;

    C.) explanation for the facts and thought processes behind the Debtors' statements in the Plan, including the decision not to pursue "clawback" claims, See, 11 U.S.C. §§ 544 and 547;

    D.) provide information about the Debtor's financial history, reasons for filing this case; and assumptions underlyimg the Debtors' projections;

    E.) explain the economics behind the Debtors' decision to substantively consolidate the Debtors;

    F.) accurate statements about the Plan's provisions

    G.) provide information clearly.

These matters are elucidated herein

## **CONSIDERATIONS FOR APPROVING DISCLOSURE STATEMENTS**

4. Soliciting acceptance for a proposed plan of reorganization may not occur unless:

> . . .there is transmitted to the [holders of claims and interests] the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

11 U.S.C. § 1125(b).

5. "Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the

benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a).

6. *In re Metrocraft Publ'g Servs.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984), provided a non-exhaustive list of factors that should be disclosed, with the qualification that "[d]isclosure of all factors is not necessary in every case." The factors are:

   (1) the events which led to the filing of a bankruptcy petition;

   (2) a description of the available assets and their value;

   (3) the anticipated future of the company;

   (4) the source of information stated in the disclosure statement;

   (5) a disclaimer;

   (6) the present condition of the debtor while in Chapter 11;

   (7) the scheduled claims;

   (8) the estimated return to creditors under a Chapter 7 liquidation;

   (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;

   (10) the future management of the debtor;

   (11) the Chapter 11 plan or a summary thereof;

(12) the estimated administrative expenses, including attorneys' and accountants' fees;

(13) the collectability of accounts receivable;

(14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;

(15) information relevant to the risks posed to creditors under the plan;

(16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

(17) litigation likely to arise in a non-bankruptcy context;

(18) tax attributes of the debtor; and

(19) the relationship of the debtor with affiliates.

*In re Avianca Holdings S.A.*, 632 B.R. 124, 130 (Bankr. S.D.N.Y. 2021). The "Metrocraft Factors."

7. In addressing these topics:

- Adequate information requires clarity and realism, in simple, clear language so creditors can intelligently accept or reject the Plan. *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

- Statements of opinion or belief without factual support do not belong in disclosure statements. *In re Egan*, 33 B.R. 672, 675 (Bankr. N.D. Ill. 1983), citing, *"Disclosure of 'Adequate Information' Under Chapter 11 of the Bankruptcy Code,"* 1983 Ann.Surv.Bankr.L. 323, *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985), *In re East Redley Corp.*, 16 B.R. 429 (Bankr. E.D.Pa.1982).

- Disclosure statements' contents must be accurate. *In re Cardinal Congregate* I, 121 B.R. 760, 766 (Bankr. S.D. Ohio 1990).

8. The Disclosure Statement addresses some of the Metrocraft Factors.

9. However, the Disclosure Statement lacks the clarity, accuracy and substance to provide "adequate information"

## INADEQUATE DISCLOSURE OF RISKS

10. Number "15" of the Metrocraft Factors is "information relevant to the risks posed to creditors under the plan."

11. The Plan is subject to substantial risks and assumptions.

12. Yet, the Disclosure Statement fails to discuss them.

**Subordinating Mr. Gill's Claim**

13. The Plan ¶ 3.6 provides for Class 4 unsecured creditors to receive:

    a total of 10% of their Allowed claims [$840,632,] payable in ten (10) installments with each installment in the amount of one tenth (1/10) of such 10% amount, without interest, commencing on the anniversary of the Effective Date each year, for a period of ten (10) years.

14. It is undisclosed that this treatment depends on the Debtor subordinating Mr. Gill's $2,178,904 claim to the claims of unsecured creditors.

15. For this, the Plan creates a "Class 5" of which Mr. Gill is the only member.

16. What happens if Mr. Gill's claim expands the Class 4 creditor universe to $3,019,536 is not considered.

17. The Disclosure Statement, ¶ 3.7, relates that an "Adversary Proceeding has commenced to subordinate the claims of Gill to the claims of all creditors pursuant to § 510 of the Bankruptcy Code as claims arising out of the purchase of securities of the Debtors."

18. Disclosure Statement fails to disclose that Mr. Gill's claim may not be subject to subordination by 11 U.S.C. § 510(b).

19. Adhering to the adage "the enemy has a vote,"[1] Mr. Gill is moving to dismiss the adversary proceeding.

---

[1] Attributed to Winston S. Churchill.

20. The Disclosure Statement seems unaware of this significant risk.

**Risk of Payments**

21. The Plan provides that Class 4 unsecured creditors will receive payments from the Debtor over ten years.

22. The Plan provides that the Class 5 creditor, Mr. Gill, will receive payments from Penny K. Sandhu over ten years.

23. Other than the Disclosure Statement representing at ¶ 48 that Ms. Sandhu will be receiving an income from the Reorganized Debtor, no information is provided showing that these payments can or will actually occur. Ms. Sandhu's resources are not discussed.

*Payments to Creditors*

24. The Disclosure Statement provides no substantive disclosure from the Debtor addressing the Debtors' abilities to make payments to creditors under Plan.

25. The Disclosure Statement's Exhibit "H" is a statement of projections for July 31, 2025 through 2028.

26. We appreciate that projections are by nature and inherently speculative. See, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 CIV. 10067 (PAE),

2023 WL 4249356, at *15 (S.D.N.Y. June 29, 2023)("projections are, by nature, speculative"), *In re SLM Int'l, Inc.*, No. 95-1313, 1999 WL 34971879, at *14 (Bankr. D. Vt. July 30, 1999).

27. Still, there should be some historical foundation on which to base the projections.

28. The Disclosure Statement, ¶ 38, says "The Debtors have been operating at a profit since the December 2024 filing."

29. The Debtors each filed three operating reports for the entire period of being in Chapter 11.

30. Based on these operating reports, the net operating revenues for each Debtor is:

| | |
|---|---|
| Jus Broadcasting | -$9,105 |
| Jus Punjabi | $6,514 |
| Jus One | $1,55 |

31. Had the Debtors filed more operating reports, as required, the tabulation might be different.

32. Nevertheless, the Debtor's numbers show no commutative profit for this case's duration.

33. Nor do they provide credence for the Debtors projecting total net income of $61,260 as of July 31, 2025 (See, Disclosure Statement Exhibit "H").

34. Based on the Debtors' own numbers, the Disclosure Statement is inadequate.

## TREATMENT OF TAX CLAIMS

35. The Disclosure Statement accurately represents that Class 4 creditors include "unsecured taxes."

36. The Disclosure Statement also represents, at ¶ 50, that "priority claims including tax claims . . . shall be paid in accordance with §1129 of the Bankruptcy Code."

37. However, the proposed payment of 10% over ten years without interest provided to Class 4 Claim, is not what 11 U.S.C. § 1129(sa)(9)(C) provides for tax claims.[2]

---

[2] 11 U.S.C. § 1129(a)(9)(C) provides:

> (C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--
> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
> (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))

11 U.S.C.A. § 1129 (West)

38. The Disclosure Statement does not explain the Plan's divergence from the Bankruptcy Code's requirements or the misstatement that tax claims "shall be paid in accordance with §1129 of the Bankruptcy Code."

### PENNY SANDHU'S COMPENSATION

39. The Disclosure Statement, ¶ 54, states that Penny Sandhu will receive an annual salary of $50,000,

40. Plan ¶ 5.1 says Ms. Sandhu will receive an annual salary of "$60,000 plus all fringe benefits as she presently enjoys."

41. The discrepancy is obvious.

42. Moreover, some value should be attributed to the 'fringe benefits" Ms. Sandhu will continue to enjoy.

### CLAW-BACK CLAIMS

43. In summary, the Disclosure Statement concludes, ¶ 74, without explanation, that pursuing "claw-back" claims is not worth the effort.

44. How the Debtors' management reached this conclusion deserves disclosure.

45. Mr. Gill's own investigation disclosed that between 2016 and 2019 Ms. Sandhu had the Debtors transfer $1,228,901.26 to "Jus Broadcasting Private Limited."

46. Upon information and belief Ms. Sandhu owns that entity.

47. Approximately $600,000 was transferred in the past six years.

48. Ms. Sandhu represented that the payments were on account of outsourced services.

49. However, Mr. Gill is unaware of that entity ever invoicing the Debtors for the alleged services.

50. We appreciate that the transferee is located in India.

51. However, its principal resides locally.

52. The ability to obtain and enforce a judgment appears less remote than the Disclosure Statement concludes.

53. The Disclosure Statement lacks adequate information concerning the Debtors' and Disclosure Statement's conclusion that claw-back litigation was not worth pursuing.

### CIRCUMVENTING THE EXCEPTION TO THE "ABSOLUTE PRIORITY RULE"

54. The Plan provides that Penny Sandhu will retain 100% interest in the Reorganized Debtors.

55. The Plan does provide that Ms. Sandhu's existing shares will be cancelled.

56. However, Ms. Sandhu regains her 100% interest in the Debtors for her obligation to pay Mr. Gill 10% of what Class 4 creditors receive over ten years = $840.63 x 10.

57. Ms. Sandhu appears to be availing herself of the "new value exception to the absolute priority rule." See, *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 442 (1999) (the "New Value Rule").

58. For the New Value Rule to apply, the capital contribution by old equity must be: "(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5) reasonably equivalent to the property that old equity is retaining or receiving." *In re RAMZ Real Est. Co., LLC*, 510 B.R. 712, 718 (Bankr. S.D.N.Y. 2014).

59. Old equity may "contribute funds and retain control of the debtor so long as creditors were given this opportunity first and declined to do so." *In re Eletson Holdings Inc.*, 664 B.R. 569, 612 (Bankr. S.D.N.Y. 2024).

60. The Disclosure Statement evidences the Debtors' belief that they can simply "will" the New Value Exception effective.

61. The Disclosure Statement fails to discuss how any of the requirements for the New Value Rule are satisfied.

62. Nor, does it describe any effort to have creditors contribute funds to reorganization efforts.

63. Moreover, the Debtors' to extending their "exclusivity periods" prevented any competing plan of reorganization.

## SUBSTANTIVE CONSOLIDATION

64. The Debtors seek to have their three cases substantively consolidated.

65. The Disclosure Statement summarizes the law.

66. It also provides conclusions about how the requirements for substantive consolidation are satisfied.

67. In reality, the analysis of the actual economics, claims, and assets are necessary to determine whether substantive consolidation is appropriate and beneficial.

68. The Disclosure Statement lacks that analysis.

69. It offers only conclusions.

70. Creditors are not provided adequate information for them to decide to accept a plan which includes substantive consolidation.

## AWKWARDNESS AND LACK OF CLARITY

71. The Disclosure Statement has too many instances of a lack of clarity to cite them all.

72. The Disclosure Statement should be revised to be more "reader friendly."

**WHEREFORE**, Kashmir Gill asks this Court to deny the Application and issue orders: a.) not approving the Disclosure Statement; and granting such other and further relief as the Court deems proper.

Dated: New York, NY
      July 16, 2025

                              JACOBS, P.C.
                              *Attorneys for Creditor*
                              *Kashmir Gill*
                              717 Fifth Avenue -17th Floor
                              New York, New York 10022
                              212-229-0476

                              By:/s/ *Wayne M. Greenwald* Senior Counsel
                                         Wayne M. Greenwald